IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DERRICK D. YOUNG                                                    PLAINTIFF

v.                              Civil No. 13-2098

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                      DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Derrick Young, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.    Procedural Background:

The Plaintiff filed his applications for DIB and SSI on August 9, 2010, and November 5, 2010, respectively, alleging an onset date of July 15, 2009, due to severe back problems with pain radiating into his legs, neck, arms, spine, and shoulders. Tr. 97, 105-106, 137. His claims were denied both initially and upon reconsideration. An administrative hearing was then held on October 11, 2011. Tr. 435-457. Plaintiff was both present and represented at that hearing.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

A the time of the administrative hearing, Plaintiff was 38 years old and possessed the equivalent of a high school education.  Tr. 29, 97.  He had past relevant work ("PRW") experience as a turkey catcher, shoulder cutter, carpenter, and laborer.  Tr. 29, 98, 115-122.

On October 26, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's degenerative disk disease did not meet or equal any Appendix 1 listing.  Tr. 23-24.  The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work involving only occasional climbing, balancing, crawling, kneeling, keeling, stooping, and crouching.  Tr. 12.  Further, the ALJ concluded Plaintiff must shift positions every 30 minutes.  Tr. 24-29.  With the assistance of a vocational expert, the ALJ then found Plaintiff could perform work as a compact assembler, shoe buckler and lacer, ordinance check weigher, nut sorter, and zipper trimmer.  Tr. 30.

The Appeals Council denied Plaintiff's request for review on July 16, 2013[2]. Tr. 7-10.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 12, 13.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

---

[2]The Appeals Council also denied review on February 7, 2013, but on July 16, 2013, indicated that they had received additional medical evidence and had reviewed this evidence.  Tr. 3-10.  However, after reviewing the additional evidence, review as again denied.

II.  **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

AO72A
(Rev. 8/82)

### A.    The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)-(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.   Discussion:

In the present case, the ALJ concluded that Plaintiff suffered from only one severe impairment, degenerative disk disease ("DDD").  A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).  The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms.  20 C.F.R. § 404.1508.

While we agree that the record supports a finding of severe DDD, we also note that Plaintiff suffered from additional neck and back impairments. Medical evidence indicates the Plaintiff had undergone anterior cervical fusion surgery in 2006, following which it was determined he remained capable of performing only sedentary work. Tr. 335. However, in June 2009, he slipped and fell at work, reinjuring his neck and injuring his lower back. On June 9, 2009, an MRI of his cervical spine revealed desiccation of all intervertebral disks with mild loss of vertical height at each level, mild diffuse annular disk bulging at the C4-5 and C6-7 levels with moderate right sided C6-7 neural exit foraminal narrowing secondary to uncovertebral joint spurring, and mild dextroscoliosis of the cervical vertebral column. Tr. 274, 395, 403.

On June 24, 2009, Dr. J. Justin Seale, noted a decreased range of motion in Plaintiff's cervical spine causing right upper extremity radicular pain, significant muscle spasms, tenderness at the base of cervical spine, mild mid-thoracic muscle spasms, decreased forward flexion and extension secondary to lumbosacral pain, and bilateral lumbosacral muscle spasms with muscles very tender to palpation. X-rays showed disk space narrowing at the C4-5 and C6-7 levels and slight disk dessication at multiple levels. Dr. Seale diagnosed Plaintiff with C6-7 level right foraminal stenosis with adjacent segment DDD and C7 level severe radiculopathy and neck pain radiating into the upper extremity. Lower back pain with left lower extremity radiculopathy and associated tingling and numbness were also noted. Accordingly, Dr. Seale ordered an MRI of Plaintiff's lumbar spine that showed degenerative changes with minimal annular tears, superimposed arthropathy, ligament thickening and short pedicles at the L4-5 level producing moderate (approaching severe) spinal canal stenosis, possible nerve root impingement, and an annular tear at L5-S1 level.

AO72A
(Rev. 8/82)

On August 26, 2009, a repeat MRI revealed a central disk bulge at the L5-S1 level with mild facet joint osteoarthritis.  Tr. 396. Plaintiff was initially treated conservatively via prescription pain medication, muscle relaxers, physical therapy, and epidural steroid injections. However, his condition was unresponsive and ultimately necessitated spinal canal and lateral recess stenosis decompression surgery for bilateral decompression of the L4-5 level spinal segments on December 8, 2009.  Tr. 316-317.

Although it does appear that Plaintiff initially responded well to surgery, his pain returned.  On July 20, 2011, Candice Welcher, a nurse practitioner working for Dr. Erwin Cortez indicated that Plaintiff could lift less than 10 pounds both frequently and occasionally, stand/walk a total of 30 minutes, and must periodically alternate sit and stand positions to relieve pain and discomfort.  Tr. 153-156, 195-198, 339-342.  She also assessed him with moderate limitations in carrying out detailed instructions and marked limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

In August 2011, a repeat MRI of Plaintiff's lumbar spine revealed a central disk bulge at the L5-S1 level with mild facet joint osteoarthritis and evidence of a prior L5 laminectomy with borderline spinal stenosis and mild facet degenerative change.

On May 14, 2012, Dr. Joseph Dunaway assessed Plaintiff with numbness in his hands, tenderness in the C5-7 area with decreased range of motion and muscle spasms, and decreased sensation in his right fifth finger.  He diagnosed Plaintiff with spinal stenosis in the cervical spine with neuropathy and gout.  Dr. Dunaway prescribed Hydrocodone, Indomethacin, and Rubaxin.

6

On July 3, 2012, Plaintiff continued to exhibit a decreased range of motion in his back with muscle spasms and pain and a decreased range of motion in his neck with muscle spasms and pain.  Dr. Dunaway prescribed Parafon Forte and Hydrocodone.

On July 17, 2012,  Dr. Cortez examined Plaintiff.  Tr. 413-415.  Although he denied weakness, he reported numbness and tingling at the distal limb of the right upper extremity toward the ulnar distribution.  Plaintiff indicated that this was made worse by prolonged sitting, standing, stooping, climbing stairs, and doing desk work.  An examination revealed tender points over the paraspinous muscles bilaterally, a limited range of motion in the lumbar spine with tender points elicited over the paralumbar muscles bilaterally, and diminished sensation on the ulnar distribution on the right hand as well as over the anterior thigh of both lower extremities.  Dr. Cortez diagnosed him with chronic cervicalgia associated with postlaminectomy syndrome, chronic low back pain associated with postlaminectomy syndrome, and ulnar neuropathy in the right upper extremity.  He advised Plaintiff to continue on the Hydrocodone, but changed his muscle relaxant to Baclofen.

On September 13, 2012, Dr. Cortez again noted diminished sensation along the ulnar distribution on the right and the L2-3 level distribution on the left.   Tr. 412.  And, he repeated his diagnoses of chronic cervicalgia associated with postlaminectomy syndrome and chronic low back pain associated with postlaminectomy syndrome.  This time, Hydrocodone and Soma were prescribed.

It appears to the undersigned that the ALJ lumped Plaintiff's back and neck impairments into his finding of severe DDD.  However, the evidence suggests the Plaintiff might have greater limitations than those assessed by the ALJ.  We are particularly concerned that he was assessed

AO72A
(Rev. 8/82)

no limitations involving his ability to reach, handle, and finger, in spite of the evidence suggesting limitations involving his neck and diminished sensation in his right upper extremity. Accordingly, we find that remand is necessary to allow the ALJ to reconsider Plaintiff's severe impairments and to revise his RFC to include the limitations imposed by each of his impairments.

We also find that the ALJ failed to fully and fairly develop the record with regard to Plaintiff's RFC. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). In January 2010, Dr. Schlesinger indicated that he would be sending Plaintiff for a functional capacity evaluation at the conclusion of his physical therapy. No FCE is contained in the record, and we can find no evidence to indicate that the ALJ attempted to obtain this information from Dr. Schlesinger. Therefore, on remand, the ALJ is directed to recontact Dr. Schlesinger to obtain the records documenting Plaintiff's post-therapy FCE.

On remand, the ALJ is also reminded that Plaintiff suffers from gout, and was treated for this condition several times during the relevant time period. Any limitations resulting from Plaintiff's gout must be included in the RFC assessment, regardless of whether the ALJ finds this condition to be severe or non-severe.

## V.    <u>Conclusion</u>:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

AO72A
(Rev. 8/82)

DATED this 17th day of June 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

9